UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LAMAR LYMAN,

and

FAIR HOUSING CENTER OF
METROPOLITAN DETROIT,

Plaintiff,

v.

MONTCLAIR AT PARTRIDGE
CREEK, LLC,

and

MOCERI MANAGEMENT CO, INC.,

Defendants.

Case No.: 2:23-CV-10131-MAG-EAS
Hon. Mark A. Goldsmith
Magistrate Judge Elizabeth A. Stafford

| WILLIAM F. PIPER, PLC | The Googasian Firm, P.C. |
|---|---|
| William F. Piper (P38636) | Dean M. Googasian (P53995) |
| *Attorney for Plaintiff* | *Attorney for Defendant's* |
| 1611 W. Centre Street, Ste. 209 | 6905 Telegraph Road, Suite 140 |
| Portage, MI 49024 | Bloomfield Hills, MI 48301 |
| (269) 321-5008 | 248-502-0875 |
| (269) 321-5009 (facsimile) | dgoogasian@googasian.com |
| wpiper@wpiperlaw.com | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES …..............................................................................................iii

I. INTRODUCTION AND STATEMENT OF FACTS………..………………………1

II. STANDARDS APPLICABLE TO MOTIONS UNDER
    a. FED. R. CIV. P. 12(b)(6)……………………………………….……………1

III. LAW AND ARGUMENT………………………………………….……………..2

    A. THE PLAINTIFFS' DISPARATE TREATMENT CLAIMS HAVE MERIT……………………………….………………2

    B. THE PLAINTIFFS CLEARLY HAVE VALID DISPARATE IMPACT CLAIMS……………………………………………………9

VI. RELIEF REQUESTED………………………………………………………...……11

INDEX OF AUTHORITIES

Page(s)

## Cases

*Almonte v. Pierce,* 666 F. Supp 517 (S.D.N.Y 1987) .................................................................. 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 123 L.Ed.2d 868 (2009) ................................... 1

*Bazemore v. Friday*, 478 U.S. 385, 400, 106, S. Ct. 3000, 3009, 92 L.Ed.2d 315 (1986) ............ 8

*Bruno v. W B Saunders Co.*, 882 F. 2d 760 (3rd Cir. 1989) ........................................................... 8

*Castenada v. Partida*, 430 U.S. 482, 97 S. Ct. 2736, 51 L. Ed. 2d 498 (1977) ............................. 8

*Chaney v. Plainfield Healthcare Center*, 612 F.3d 908 (4th Cir. 2010) ........................................ 4

*Connecticut Fair Housing Center, et al. v. CoreLogic Rental Property, 478 F. Supp. 3d 259* (D. Conn 2020) .................................................................................................................... 11

*Corp. v. Duke, 811 F. Supp.2d 1323 (E.D. Mich. 2011)* ............................................................... 1

*Dothard v. Rawlinson* 433 U.S. 321, 97 S. Ct. 2720, 53 L. Ed. 2d 786 (1977) ............................. 9

*Earl v. Media Research, Inc.*, 658 F.3d 1108, 1117-1118 (9th Cir. 2011) ..................................... 4

*Fortune Society v. Sand Castle Towers Housing Development,* 388 F. Supp 3d 745 (E.D. N.Y. 2022) ................................................................................................................................. 11

*Freemont Reorganizing Corp. v. Duke*, 811 F. Supp.2d 1323 (E.D. Mich. 2011) ......................... 1

*Furnco Const Corp. v. Waters,* 438 U.S. 567, 98 S. Ct. 2943, 57 L.Ed.2d 957 (1978) ............. 4,8

*Havens Realty Corp. v Coleman,* 455 U.S. 163, 102 S. Ct. 1114, 71 L.Ed.2d 214 (1982) ............ 6

*Hazelwood School Dist. v. United States,* 433 U.S. 299, 97 S. Ct. 2736, 53 L. Ed. 2d 768 (1977) 8

*Housing Applications Made Equal Inc. v. Cincinnati Enquirer Inc.*, 943 F.2d 644, 646 (6th Cir. 1991) ................................................................................................................................... 6

*International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 371 97 S.Ct. 1843, 1872, 52 L.Ed.2d 396 (1977)……………………………………………………………………….7, 8

*New Albany Tractor, Inc., v. Louisville Tractor, Inc*., 650 F.3d 1046, 1050 (6th Cir. 2011).......... 1

*Serrano v. Cintas Corp*., 695 F.3d 884 (6th Cir. 2012) ................................................................. 1

*Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 512-15, 122 S. Ct. 992, 151 L.Ed.2d 1 (2002)..1, 4

*Smith  v. United States Department of Housing and Urban Development,* 2022 W.L. 18 107588 (W.D. Mich 2022) .................................................................................................................. 6

*St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) ...... 8

*Sweat v. Miller Brewing Co.,* 708 F. 2d 655 (11th Cir. 1983) ......................................................... 8

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981)……………………………………………………………………………….3, 9

*Woods v. City of Greensboro,* 855 F.3d 639 (4th Cir. 2017) ......................................................... 2


 **Court Rules and Statutes**:

Fed Rule Civ P. 12………………………………………………………………………………….1

Fed. R. Civ. P. 12(b)(6)…………………………………………………………………………..1

Fed R. Civ. 8(a)(2)…………………………………………………………………………...1

Fed R. Civ P. 8……………………………………………………………………………………1

24 C.F.R. 100.500…………………………………………………………………………………9

## I. INTRODUCTION AND STATEMENT OF FACTS

The defendants have brought this motion to dismiss the plaintiffs' lawsuit under Fed Rule Civ P. 12. Because the defendants brings this motion under Fed R. Civ. P. 12, the facts (together with any inferences from those facts) are set forth in their **First Amended Complaint**. The plaintiffs will discuss those facts in their argument.

## II. STANDARDS APPLICABLE TO MOTIONS UNDER FED. R. CIV. P. 12(b)(6)

Fed R. Civ. 8(a)(2) states that pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 123 L.Ed.2d 868 (2009), the United States Supreme Court ruled, essentially, that to be sufficient under Fed R. Civ P. 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face, and that conclusory legal statements are not sufficient. It is clear, however, that notice pleading is still the standard. There is no enhanced prima facie case pleading requirement in civil rights cases. Plaintiffs need only submit a "simple and plain" statement of the claim in their initial pleading. *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 512-15, 122 S. Ct. 992, 151 L.Ed.2d 1 (2002); *New Albany Tractor, Inc., v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). A pleading has to have enough actual content to allow a court to make a reasonable inference that the defendant is liable for the misconduct alleged. *Freemont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323 (E.D. Mich. 2011). A pleader need not plead in a complaint his method of proof, including whether he is relying on direct or circumstantial evidence, or to prove pretext, contrary to what the defendants appear to suggest in their brief. *Serrano v. Cintas Corp.*, 695 F.3d 884 (6th Cir. 2012). The parties, obviously, should not have to try their lawsuit in pleadings.

1

## III. LAW AND ARGUMENT

### A) THE PLAINTIFFS' DISPARATE TREATMENT CLAIMS HAVE MERIT.

The defendants throughout their brief seem to argue that the plaintiffs must plead such factual proof and factual specificity that would be required in a response to a Motion for Summary Judgment. Again, the plaintiffs emphasize that the standards applicable to motions to dismiss, as set forth in section II above, are much different from the standards for motion for summary judgment.

The defendants then argue that the plaintiffs did not plead the elements of disparate treatment. The defendants actually cited the HUD guidance, as if the guidance required a rigid method of proof. However, the HUD guidance merely states, "for example," not for purposes of limitation, on page 9 of it, for how to establish a prima facie case. The defendants then further pursued this misrepresentation of what the HUD guidance says, both on page 6, and on page 16, of their brief. Then they argue that the replacement by a person outside of the plaintiffs' protected class element is necessary for the plaintiffs to prove a prima facie case, viz., that the housing provider offered housing to a similarly situated applicant not of the plaintiffs' protected class, but with a comparable criminal records (citing HUD guidance, at p. 9 of it).

It would be practically impossible for any plaintiff to have this knowledge of the plaintiff's replacement unless he worked for the housing provider. An applicant would not know about the operation of the defendants' business. Courts should remember not to require detailed and impossible to obtain proof at the mere complaint stage of the litigation process, when no discovery has occurred. For example, in *Woods v. City of Greensboro,* 855 F.3d 639 (4th Cir. 2017), which is a post-*Iqbal* and post-*Twombly* case, regarding motions to dismiss in cases involving implicit racial bias, the court stated as follows:

> In reaching our conclusion, we note that discrimination claims are particularly vulnerable to premature dismissal because civil rights plaintiffs often plead facts that are consistent with both legal and illegal behavior, and civil rights cases are more likely to suffer from information-asymmetry, pre-discovery. See, e.g., Suzette M. Malveaux, The Jury (or More Accurately the Judge) Is Still Out for Civil Rights and Employment Cases Post–Iqbal, 57 N.Y.L. Sch. L. Rev. 719, 722–23 (2012–2013). There is a real risk that legitimate discrimination claims, particularly claims based on more subtle theories of stereotyping or implicit bias, will be dismissed should a judge substitute his or her view of the likely reason for a particular action in place of the controlling plausibility standard. Such an approach especially treads through doctrinal quicksand when it is undertaken without the benefit of a developed record, one essential to the substantiation or refutation of common sense allegations of invidious discrimination
>
> * * * *
>
> [A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Twombly* , 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes* , 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ). Manifestly, the rule of *Iqbal* /*Twombly* was not intended to serve as a federal court door-closing mechanism for arguably weak cases, even assuming this case fits the description of "arguably weak."

855 F.3d, at p. 652.

Fortunately, there are ways of pleading disparate treatment other than to plead an unknowable replacement element. After all, the United States Supreme Court has emphasized that establishing a prima facie case is "not onerous." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981). And the requirements of a prima facie case can vary depending on the context, and they were never intended to be rigid,

3

mechanized and ritualistic. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002). This can include other circumstantial evidence, including statistical evidence. *Furnco Const Corp. v. Waters,* 438 U.S. 567, 98 S. Ct. 2943, 57 L.Ed.2d 957 (1978).

In the plaintiffs **First Amended Complaint**, at paragraph 57, they alleged that several factors suggested that the defendants adopted the no felony policy deliberately in order to exclude African-Americans, and, specifically, Mr. Lyman. This includes the defendants' adoption of such policies despite the housing industry's rejection of such policies because of their discriminatory impact. And, furthermore, the defendants did research regarding Mr. Lyman beyond the original criminal record check (which was negative) to obtain a disqualifying felony, as explained more specifically at paragraphs 13 and 14 of the **First Amended Complaint**. This departure from normal procedures suggests intentional discrimination, as alleged in paragraph 58 of the plaintiffs' **First Amended Complaint**. See e.g. *Earl v. Media Research, Inc.*, 658 F.3d 1108, 1117-1118 (9th Cir. 2011); *Chaney v. Plainfield Healthcare Center*, 612 F.3d 908 (4th Cir. 2010). It also suggests that the defendants did not like the way Mr. Lyman looked, which implies race discrimination.

The defendants then argue, at subsection 2 of their brief, that Mr. Lyman was not qualified to rent because he has a felony conviction. This tautological and illogical argument rejects one of the basis' of the disparate treatment claim, which was that the defendants maintained the no felony policy because they knew it would have a disparate effect on African-Americans. Therefore, it engaged in intentional discrimination. And there is no housing law that holds a person with certain felony conviction is automatically disqualified.

The defendants then improperly argue, at subsection 3, that the defendants would have denied Mr. Lyman a tenancy because of the alleged severity of his conviction. But this argument contradicts the facts of the **First Amended Complaint**. In the **First Amended Complaint** the

plaintiffs alleged that the defendants rejected Mr. Lyman because of a blanket no felony policy and for no other reason, (not because of any consideration of the severity of his felony conviction).

More specifically, at paragraph 15-17 of the **First Amended Complaint**, the plaintiffs alleged that the defendants told Mr. Lyman that they could not lease to him because of the results of his criminal background check. At paragraph 18 the plaintiffs alleged that the defendants' agent told Mr. Lyman that if they deviated from their policy of not accepting anyone with a criminal conviction they would be engaging in discrimination, and they do not consider cases individually. And at paragraph 19 the plaintiffs alleged that the defendants' agent told him that otherwise his application was fine, and his criminal conviction was the only reason they had rejected his application. So clearly the defendants did not consider the alleged severity of his felony conviction as a reason for rejecting his application. Rather it was the rigid no felony policy that was the reason for rejecting his application. The defendant's arguments, which are not supported by the **First Amended Complaint**, are what is not not plausible in a motion to dismiss under Rule 12.

The plaintiffs also alleged at paragraph 47 of their **First Amended Complaint** that studies indicate that for criminal convictions of at least seven (or even fewer) years old, the risk for future arrest for somebody with a past conviction becomes no greater than the risk for someone without a past conviction. Mr. Lyman's conviction was over 10 years old, and he had very successfully rehabilitated, and was qualified to rent comparable apartments. **(See First Amended Complaint at paragraphs 9-10)**. Therefore, using the domestic violence related felony conviction involving his ex wife against Mr. Lyman, even if it had been individually considered, was irrational and discriminatory.

The defendants also cited *Smith v. United States Department of Housing and Urban Development,* 2022 W.L. 18 107588 (W.D. Mich 2022), in support of their arguments. This case is not relevant. The plaintiff in that case was pro se. His complaint was not well developed. He did not raise facts and arguments that the plaintiffs in this case have. The magistrate judge in that case was Phillip Green, not David Grand as the defendants falsely assert. The only similarity factually and legally between this case and that one is that both were presented to a magistrate judge with a last name beginning with the letter "G". Unpublished cases like that should never be cited as precedent.

Finally, the plaintiff alleged that the defendants continued to accept applications for, and rent, apartment units thereafter. **(See First Amended Complaint, at paragraph 20)**. The defendants strangely claim that the plaintiffs' factual allegations belie that. The plaintiffs also alleged that the defendants' agent told Mr. Lyman that his criminal record (not unavailability of an apartment unit), was the only reason he was rejected (**First Amended Complaint, at paragraph 19**). This is a fact that cannot be challenged is a rule 12 motion. Furthermore, there were two months between June 9, 2022 and August 11, 2022, when the tester was told units were not available until October, when apartments could have been available. And an apartment unit became available in October 2022 (**First Amended Complaint**, **at paragraph 22**). The defendant's arguments regarding this are therefore baseless.

The defendant even challenged the standing of the Fair Housing Center. Fair Housing Center plaintiffs' standing is well established. The Fair Housing Center in this case clearly has standing, based on its allegations of diversion of resources. **(See First Amended Complaint, at paragraphs 72 – 80)**. See *Havens Realty Corp. v Coleman,* 455 U.S. 163, 102 S. Ct. 1114, 71 L.Ed.2d 214 (1982). *Housing Applications Made Equal Inc. v. Cincinnati Enquirer Inc*., 943

6

F.2d 644, 646 (6th Cir. 1991). The Fair Housing Center has standing to address the unlawful discriminatory policy along with, and independent of, Mr. Lyman's claims.

The plaintiffs also add that the statistical evidence the plaintiffs pleaded (which will be more fully explained later by an expert), can be used to prove intentional discrimination as well as disparate impact. The plaintiff has pleaded that the defendants were aware of HUD guidelines and industry norms and knew or should have known that the defendants' no felony policy would unfairly and disparately exclude African-Americans.

The United States Supreme Court has long noted that statistics can be an important source of proof in discrimination cases (This includes Fair Housing cases). *Almonte v. Pierce,* 666 F. Supp 517 (S.D.N.Y 1987)). This is so because, as explained by the United States Supreme Court:

> Absent explanation, it is ordinarily to be expected that non discriminatory hiring practices will in time result in a work force more or less representative of racial and ethnic composition of the hired. Evidence of a longlasting and gross disparity between the composition of a work force and that of the general population thus may be significant even though 703 (1) makes clear that Title VII imposes no requirement that a work force mirror the general population.

*International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 57 S. Ct. 1957, 53 L. Ed. 2d 356 (1977). Accordingly, the United States Supreme Court has held that, by use of statistical evidence, where the difference between that expected number of employees in a protected group and the observed number is greater that two or three standard deviations, a significant statistical disparity exists. Such a statistical disparity can constitute both a prima facie case of intentional discrimination and strong evidence of pretext, by indicating strongly that a

7

non-random decision or action was taken. See *Castenada v. Partida*, 430 U.S. 482, 97 S. Ct. 2736, 51 L. Ed. 2d 498 (1977). (Grand jury selection); *Hazelwood School Dist. v. United States,* 433 U.S. 299, 97 S. Ct. 2736, 53 L. Ed. 2d 768 (1977).

It is truism that statistical evidence cannot definitively prove that discrimination caused a particular statistical disparity. Statistical evidence can only provide information on the likelihood of a particular result being the result of chance, or, its flip side, that a non-random result has occurred. Nevertheless, in discrimination cases, a jury is allowed to infer, and, if the evidence is compelling enough, should infer, on the basis of statistical evidence alone, that the observed result was caused by discrimination in the legal sense, despite its limitation in proving causation in a more vigorous sense. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 371 97 S.Ct. 1843, 1872, 52 L.Ed.2d 396 (1977). In fact, statistical evidence should be considered when proffered to show both a prima facie case and pretext. *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 579-580, 98 S. Ct. 2943, 57 L. Ed. 2d 457 (1978). Furthermore, the Supreme Court and other courts have recognized that statistical evidence need not be perfect to have these legal consequences. *Bazemore v. Friday*, 478 U.S. 385, 400, 106, S. Ct. 3000, 3009, 92 L.Ed.2d 315 (1986). Moreover, statistical evidence is relevant in individual discrimination cases in addition to class actions and the like. Even imperfect statistical evidence can bolster a plaintiff's claim that the defendant articulated reason was a pretext. *Sweat v. Miller Brewing Co.,* 708 F. 2d 655 (11th Cir. 1983); *Bruno v. W B Saunders Co*., 882 F. 2d 760 (3rd Cir. 1989); See also *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) (use of statistical evidence by the defense).

In order to determine the expected number of a protected group, it is advisable to look first at applicant data. However, often such data is not available, because the entity does not maintain or retain such records. The United States Supreme Court, however, has stated that in the

8

absence of such records, national and state census data are sufficient. The defendants are then free to present "countervailing evidence" and "point out fallacies and deficiencies" in the plaintiff's data. It cannot prevent the plaintiff's data from being admitted, however. See e.g. *Dothard v. Rawlinson* 433 U.S. 321, 97 S. Ct. 2720, 53 L. Ed. 2d 786 (1977).

For all of the above reasons, the plaintiffs have pleaded plausible disparate treatment claims.

### B. THE PLAINTIFFS CLEARLY HAVE VALID DISPARATE IMPACT CLAIMS

The defendants, of course, by their motion, attack the very notion that disparate impact claims could be actionable as applied to the use of criminal records by landlords to exclude African-Americans from tenancies. This court should reject this radical notion.

The United States Supreme Court has approved disparate impact claims in fair housing cases. *Texas Department of Housing & County Affairs v. Inclusive Communities* Project, Inc., 576 U.S. 519, 135 S.Ct 2507, 192 L.Ed.2d 514 (2015). HUD has issued regulations, which have the force and effect of law, regarding this. 24 C.F.R. 100.500.

HUD has also issued guidance that strongly supports disparate impact litigation against landlords with respect to using criminal records to exclude African-Americans from tenancies (**Exhibit 1**). It updated this in June 2022 (**Exhibit 2**). This court should recognize HUD's expertise in this area.

In this case the plaintiffs have alleged extensive facts supporting their claim that the defendants' no felony policy had a disparate impact on African-Americans generally and specifically on Mr. Lyman. In paragraphs 9-20 and 68-69 of the plaintiffs' **First Amended Complaint**, the plaintiffs alleged that the defendants' no felony conviction policy directly caused them to reject Mr. Lyman as a tenant, despite his impressive rehabilitation since his March 2011 conviction, and despite his being otherwise qualified to rent from the defendants. Furthermore,

9

the plaintiffs alleged that his criminal conviction was the only reason he was rejected from a tenancy.

Similarly, in paragraphs 21 through 29 of the compliant, the plaintiff's alleged that an African-American tester's nephew was rejected for a tenancy, despite that he was qualified financially, because of a 22-year-old felony, because of the defendants' absolute no felony convictions policy. This supports the credibility of the plaintiffs' claims throughout the **First Amended Complaint**.

The plaintiffs then, in their **First Amended Complaint**, explained in great detail how arrests and convictions of individuals has gone up in the United States since 1980. Beginning at paragraph 30 they explained that the felony conviction rates for African-Americans are significantly higher than for the general population. The plaintiffs more specifically pleaded that this significant disparity exhisted in the State of Michigan and in Macomb County, at paragraphs 36, 37 and 38 (**See paragraphs 30-81 of the First Amended Complaint**).

The defendants argued that the plaintiffs need to plead information regarding the defendants' financial requirements. However, the plaintiffs cannot reasonably know what the defendants proprietary business information is until they obtain discovery. This argument by the defendants places an unfair burden on the plaintiffs at the initial complaint stage of litigation.

The defendants appear also to assert that the plaintiffs need to plead a report from a statistical expert in their complaint. This is also not a reasonable pleading requirement.

Many of the arguments of the defendant are incomprehensible and scattershot in nature.

The defendant then cherry picks a few unpublished federal district court cases rejecting disparate impact claims in Fair Housing cases in support of their arguments. This is not convincing, given the legitimacy and acceptance of disparate impact claims in fair housing cases generally.

The plaintiffs have also alleged that the defendants' no felony policy has a disparate impact on African-Americans like Mr. Lyman, referencing national, state and local Macomb County statistics. They have also alleged that any interest of the defendants in safety can be addressed by a more narrowly tailored, individualized assessment **(First Amended Complaint, at paragraphs 30-81)**.

Two recent published opinions have accepted the use of national and state statistics regarding criminal records to establish a disparate impact claim in a fair housing case. See *Fortune Society v. Sand Castle Towers Housing Development,* 388 F. Supp 3d 745 (E.D. N.Y. 2022); *Connecticut Fair Housing Center, et al. v. CoreLogic Rental Property,* 478 F. Supp. 3d 259 (D. Conn 2020). Plaintiffs have pleaded that there is a significant national, state and local statistical disparity in felony convictions between African-Americans and other races such that the use by the defendants of felony records to exclude persons from tenancies would have a disparate impact on African-Americans. Plaintiffs should be able to proceed with their disparate impact claims.

The plaintiffs have easily pleaded, in their extensive and factually detailed complaint, plausible disparate impact claims.

## IV.     RELIEF REQUESTED

For all of the above reasons this court should deny the defendants' motion to dismiss.

Dated: April 24, 2023               William F. Piper, PLC.
                                    Attorney for Plaintiff


                         By:    /s/ William F. Piper
                                William F. Piper (P38636)
                                BUSINESS ADDRESS:
                                  1611 W. Centre Ave., Suite 209
                                  Portage, MI 49024
                                  (269) 321-5008

## **CERTIFICATE OF COMPLIANCE**

       Pursuant to W.D. Mich. LCivR 7.3(b), I, William F. Piper, certify that the foregoing brief was drafted using Microsoft Word for Office 365 word processing software, and it comprised of 3,387 words, exclusive of the case caption, cover sheets, table of contents, table of authorities, signature block, attachments, exhibits, affidavits and other addenda.

Dated: April 25, 2023        By:   /s/ William F. Piper
                                               William F. Piper (P38636)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LAMAR LYMAN,

and

FAIR HOUSING CENTER OF
METROPOLITAN DETROIT,

Plaintiff,

v.

MONTCLAIR AT PARTRIDGE
CREEK, LLC,

and

MOCERI MANAGEMENT CO, INC.,

Defendants.

Case No.: 2:23-CV-10131-MAG-EAS
Hon. Mark A. Goldsmith
Magistrate Judge Elizabeth A. Stafford

| WILLIAM F. PIPER, PLC<br>William F. Piper (P38636)<br>*Attorney for Plaintiff*<br>1611 W. Centre Street, Ste. 209<br>Portage, MI 49024<br>(269) 321-5008<br>(269) 321-5009 (facsimile)<br>wpiper@wpiperlaw.com | The Googasian Firm, P.C.<br>Dean M. Googasian (P53995)<br>*Attorney for Defendant's*<br>6905 Telegraph Road, Suite 140<br>Bloomfield Hills, MI 48301<br>248-502-0875<br>dgoogasian@googasian.com |
|---|---|

**CERTIFICATE OF SERVICE**

Jennifer Ellis being first duly sworn, deposes and says that on the 25th day of April, 2023, she sent via U.S. Mail, to the opposing counsel for the defendant Dean M. Googasian a copy of the ***Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss*** to his last known address: 6905 Telegraph Road, Suite 140 Bloomfield Hills, MI 48301, with postage having been fully prepaid.

Dated: April 25, 2023           __/s/ Jennifer Ellis__
                                                        Jennifer Ellis